IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ZOE SPENCER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:16cv331–HEH |
| ) | |
| VIRGINIA STATE UNIVERSITY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Granting Defendants' Motion to Dismiss)

Plaintiff Zoe Spencer ("Plaintiff") brings suit against her employer, Virginia State University ("VSU"), along with various members of the University's administration and Board of Visitors (collectively "Defendants"), alleging wage discrimination and retaliation under the Equal Pay Act of 1963 ("EPA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

This matter comes before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28.) Defendants seek dismissal of Plaintiff's wage discrimination and retaliation claims, arguing that Plaintiff has failed to plead a plausible claim under either the EPA or Title VII.

Each side has filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons set forth below, the Court will grant Defendants' Motion, and this case will be dismissed without prejudice.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Second Amended Complaint ("S.A.C."). Viewed through this lens, the facts are as follows.

Plaintiff has been employed with VSU since August 2008. (S.A.C. ¶ 42, ECF No. 19.) VSU initially hired Plaintiff as an Assistant Professor in the Department of Sociology, Social Work, and Criminal Justice. (*Id.*) In 2010, Defendants promoted Plaintiff to Associate Professor, a position she currently holds. (*Id.*)

Plaintiff's career at VSU has been noteworthy, and she has received numerous awards and certificates for her service to the VSU community and the community at large. (*Id.* ¶ 44.) As an Associate Professor, Plaintiff is responsible for teaching four classes each semester. (*Id.* ¶ 46.) Plaintiff's classes are consistently filled to capacity, and her evaluations from both students and faculty exceed the 95th percentile. (*Id.*) From 2011 until 2013, Plaintiff's salary was $68,500.00 per academic year. (*Id.* ¶ 47.) Plaintiff currently receives $70,040.00 per academic year. (*Id.*)

2

Plaintiff avers that VSU is a teaching university, not a research institution. (*Id.* ¶ 48.) Plaintiff also contends that the University's Employee Work Profiles ("EWPs") do not distinguish between the responsibilities and performance obligations of faculty members according to their disciplines. (*Id.*)

Plaintiff contends that according to the VSU Faculty Handbook, VSU employees are divided into Classified Personnel and General Faculty. (*Id.* ¶ 36.) Faculty salaries are based on rank and experience, rather than department. (*Id.*) Per the Handbook, "there is no difference or distinction in faculty responsibilities or job descriptions between departments or disciplines." (*Id.* ¶ 38.)

Plaintiff's S.A.C. draws comparisons between several VSU faculty members with different compensation rates than Plaintiff. Specifically, Plaintiff identifies six male professors at VSU who earn significantly higher salaries than she does despite equal or less experience and equal or fewer qualifications:

1. Cortez Dial is or was an Associate Professor in the Mass Communications Department despite the fact that when he was hired he did not possess a terminal degree in the field and had no experience teaching the subject. (*Id.* ¶ 49a.) In Spring 2015, Professor Dial taught only two courses, each of which had less than 20% enrollment. (*Id.*) In 2014, Professor Dial earned $35,406.00 more than Plaintiff. (*Id.*)

2. Michael Shackleford was an Associate Professor in the Doctoral Studies Department, despite the fact that when he was hired he had no experience teaching the subject or conducting research. (*Id.* ¶ 49b.) In

3

Spring 2015, Professor Shackleford taught two courses with enrollment maximums of 3 and 8 students respectively. (*Id.*) In 2014, Professor Shackleford earned $49,698.00 more than Plaintiff. (*Id.*)

3. Andrew Feldstein is an Associate Professor in the Management and Marketing Department. (*Id.* ¶ 49c.) In Spring 2015, he was signed up to teach only one class. (*Id.*) In 2014, Professor Feldstein earned $42,827.00 more than Plaintiff. (*Id.*)

4. Byron Greenberg was an Associate Professor in the Psychology Department. (*Id.* ¶ 49d.) In 2014, Professor Greenberg earned $6,421.00 more than Plaintiff. (*Id.*)

5. David Coss is an Assistant Professor in the Accounting and Finance Department. (*Id.* ¶ 50a.) Plaintiff avers that, prior to his employment at VSU, Professor Coss did not have any significant contributions or achievements in his field outside of academia. (*Id.*) In Spring 2015, Professor Coss was signed up to teach two courses, each with less than 40% enrollment. (*Id.*) In 2014, Professor Coss earned $38,110.00 more than Plaintiff. (*Id.*)

6. Karl Menk was an Associate Professor at VSU. (*Id.* ¶ 50b.) In 2012, Professor Menk earned $36,500.00 more than Plaintiff. (*Id.*)

In 2012, Plaintiff made attempts to address gender equity at VSU. (Id. ¶ 51.) Plaintiff served as the chair of a six-member organization entitled "The Gender Equity Task Force," a group designed to investigate wage disparity at VSU. (*Id.*) The Task

4

Force presented its findings to the Administrative Cabinet at VSU and warned the Administration about the University's potential liability under the EPA and Title VII. (*Id.*) Defendants did not make any changes to the University's compensation structure. (*Id.*)

Following the presentation, VSU Provost Weldon Hill ("Hill") referred to Plaintiff as a "trouble maker" and initiated a retaliatory campaign against Plaintiff. (*Id.* ¶ 54.) In December 2012, Hill refused to sign Plaintiff's time sheet. (*Id.* ¶ 55.) Plaintiff requested and received assistance from another Board Member who intervened on her behalf. (*Id.*). Nevertheless, Plaintiff was paid two pay periods late. (*Id.*) Then, in June 2013, the VSU Administration encouraged one of Plaintiff's former students to file a formal complaint against her with the Office of Civil Rights. (*Id.* ¶ 56.) Defendants declined to represent Plaintiff in the dispute, which was resolved in Plaintiff's favor. (*Id.*) In July 2013, Hill chastised Plaintiff in an email for publicly challenging the University's gender equality policies. (*Id.* ¶ 57.) Finally, in January 2014, Hill denied Plaintiff the opportunity to teach an additional course at Fort Lee. (*Id.* ¶ 58.) Plaintiff challenged the decision, and Defendants ultimately reinstated the course. (*Id.*)

Plaintiff requested a salary adjustment in the summer and early fall of 2014 to equalize her pay in compliance with the EPA and Title VII. (*Id.* ¶ 61.) Plaintiff's department chair supported this request. (*Id.*) Nevertheless, Hill denied Plaintiff's request. (*Id.*)

On April 13, 2015, Plaintiff filed a formal charge of discrimination and retaliation under Title VII with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶

62.) Shortly after serving her initial complaint against Defendants, the University's EEO/Compliance Manager informed Plaintiff that all future requests for information would have to go through her attorney. (*Id.* ¶ 64.) In August 2015, Plaintiff reported a troubled student for "stalking" and requested that the VSU Administration address the situation. (*Id.* ¶ 67.) VSU administrators took no action, and Plaintiff's Departmental Chair was forced to teach one of Plaintiff's classes. (*Id.*) Finally, in January 2016, Defendants removed Plaintiff from her role as Freshman Orientation speaker. (*Id.* ¶ 68.)

Plaintiff's S.A.C. contains five counts against Defendants. Counts I, III and V allege that Defendants violated the EPA and Title VII by failing to provide Plaintiff with equal pay for substantially equal work. Counts II and IV assert that Defendants unlawfully retaliated against Plaintiff under the EPA and Title VII.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted). Thus, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff relies on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) for the proposition that she "need not plead a prima facie case of discrimination." (Pl's Response to Def.'s Mot. to Dismiss, "Pl's Br." 3, ECF No. 43.) Additionally, Plaintiff deploys *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) to suggest that she need not "plead specific facts" to support her claim of discrimination. Plaintiff's reliance on these two cases is misplaced.

In *Swierkiewicz*, the Supreme Court was concerned with federal pleading standards under the "notice pleading" structure that predated *Twombly*. The Court in *Twombly* explicitly addressed the holding in *Swierkiwicz*, stating that "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized . . . that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly*, 550 U.S. at 569. While Plaintiff need not plead "specific facts establishing a prima facie case of discrimination" to survive a motion to dismiss, she must plead facts sufficient "to state a claim of relief that is plausible on its face." *Id.* at 569–70. This is not a "heightened pleading standard,"

7

as contemplated by *Sweirkiewicz*. Rather it is the prevailing standard for pleading requirements under Federal Rule of Civil Procedure 8(a).

Similarly, *Erickson* addressed pleading requirements prior to the Supreme Court's holding in *Iqbal*, which unambiguously requires a plaintiff to plead her case using specific factual allegations rather than mere conclusory statements. *Iqbal*, 556 U.S. at 678–79. Plaintiff's assertion that "there is no requirement to plead specific facts" at the Rule 12(b)(6) stage does not comport with *Iqbal's* call for "sufficient factual material, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570); (Pl's Br., 9).

As a result, neither *Swierkiewicz* nor *Erickson* alter this Court's analysis at the Rule 12(b)(6) stage.

### III. DISCUSSION

Defendants move to dismiss Plaintiff's wage discrimination claims under the EPA and Title VII, asserting that Plaintiff has not identified proper comparators as required by the statutes. Furthermore, Defendants move to dismiss Plaintiff's retaliation claims under the EPA and Title VII, alleging that Plaintiff suffered no materially adverse employment action as a result of retaliatory animus. The Court will address each argument in turn.

#### i. Wage Discrimination under the EPA

In Counts III and V, Plaintiff alleges that Defendants unlawfully and willfully discriminated against her on the basis of her sex, in violation of the EPA. The EPA prohibits employers from discriminating on the basis of sex "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the

8

opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The EPA also provides increased civil penalties for incidents of "willful" or "repeated" violations. 29 U.S.C. § 216(B)(2).

To establish a plausible claim of wage discrimination under the EPA, the Fourth Circuit has held that a plaintiff "bears the burden of showing that she (1) receives lower pay than a male co-employee (2) for performing work substantially equal in skill, effort and responsibility under similar working conditions." *Strag v. Bd. of Trustees, Craven Comm. College*, 55 F.3d 943, 948 (4th Cir. 1995). This disparity is typically shown by comparison to a specific male comparator, which must be pled with specificity. *Houck v. Virginia Polytechnic Inst.*, 10 F.3d 204, 206 (4th Cir. 1993).

A proper comparator for EPA purposes performs work "substantially equal" to that of the plaintiff. *Wheatley v. Wicomoco*, 390 F.3d 328, 332 (4th Cir. 2004). This requires more than a mere showing that the plaintiff and the putative comparator share the same job title. *Id.* The analysis turns on whether the jobs to be compared share a "common core" of tasks. *Hassman v. Valley Motors, Inc.*, 790 F.Supp. 564, 567 (D. Md. 1992) (cited for this proposition with approval in *Dibble v. Regents of Univ. of Maryland System*, 89 F.3d 828 (Table) (4th Cir. 1996) (unpublished opinion)). However, "jobs do not automatically involve equal effort or responsibility even if they 'entail most of the same routine duties.'" *Wheatley*, 390 F.3d at 333 (quoting *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493 (4th Cir. 1972)). Jobs with a shared common core of tasks may be considered unequal if the more highly paid job involves additional tasks requiring

9

extra effort or time or contributes economic value "commensurate with the pay differential." *Hodgson*, 454 F.2d at 493 (quoting *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 725 (4th Cir. 1970)).

In this case, Plaintiff has not pled an actionable claim of wage discrimination under the EPA. The S.A.C. describes in detail Plaintiff's qualifications within the field of Sociology, Social Work, and Criminal Justice, including Plaintiff's publication history, scholarly presentations, community service and awards. (S.A.C. ¶ 44.) Plaintiff also maintains that her responsibilities as an Associate Professor include teaching four classes each semester. (*Id.*) Plaintiff then identifies six faculty members at VSU—four of whom are Associate Professors—as potential comparators who receive higher salaries than she does. (*Id.* ¶ 49–50). None of these putative comparators are employed within the Department of Sociology, Social Work, and Criminal Justice. (*Id.* ¶ 49.)

Plaintiff's S.A.C. founders in its failure to identify with any degree of specificity the analogous "skill, effort and responsibility" inherent in either her job or the jobs of her putative comparators. *Iqbal*, 556 U.S. at 678. Although Plaintiff need not identify comparators in her own department, as a matter of law she must identify "appropriate" comparators. *Strag*, 55 F.3d at 950. The Court need not presume that professors employed in different departments perform "substantially equal work" for wage discrimination comparisons under the EPA. *See id.; Soble*, 778 F.2d at 167. Additionally, the mere fact that Plaintiff and four of her peers share the title "Associate Professor," without more, is not sufficient to render them appropriate comparators. *Wheatley*, 390 F.3d at 333.

Thus, Plaintiff must provide some factual basis to demonstrate that the professors identified in the S.A.C. are appropriate comparators. She fails to do so. First, Plaintiff's S.A.C. does not allege with specificity the responsibilities and requirements of her own position. Though she notes in detail her qualifications and extracurricular activities, she does not identify which of these, if any, are required and which are voluntary. The only allegation that directly bears on her job duties is the assertion that her position mandates teaching four classes per semester. (S.A.C. ¶ 44.) Moreover, the S.A.C. is devoid of any information detailing her proposed comparators' job duties, scholarly and research responsibilities, extracurricular activities, or working conditions.[1] As a result, the Court cannot find that Plaintiff's proposed comparators supply a logical, analytical basis to support a plausible wage discrimination claim under the EPA. *See Noel-Baptiste v. Virginia State University*, No. 3:12cv00826, 2013 WL 499342 at *6 (E.D. Va. Feb. 7, 2013) (finding that where the plaintiff "made no reference to the skills, effort, and responsibilities required of her as an 'Associate Professor' or to those of the male professors who she alleges receive a greater salary .... no comparisons of their respective skills, effort, and responsibilities [could]be made").

In the final analysis, Plaintiff has merely identified male professors in different departments, teaching different subjects at the University and earning a higher salary.

---

[1] Plaintiff attempts to address this deficiency by reference to the VSU Faculty Handbook and VSU EWPs, which she suggests obviate the need to establish comparators with specificity. (S.A.C. ¶ 31, 34–38.) Even if Plaintiff's reading of this document is accurate—which is in dispute, as demonstrated by Defendants' Reply in Support of this Motion—this is not the level of factual specificity required to comport with federal pleading standards. *Iqbal*, 556 U.S. at 678.

11

This does not amount to a plausible claim of wage discrimination under the EPA. As a result, Counts III and V will be dismissed without prejudice.

### ii. Wage Discrimination under Title VII

In Count I, Plaintiff alleges that Defendants unlawfully discriminated against her with respect to her compensation on the basis of gender in violation of Title VII. Title VII provides that "[i]t shall be an unlawful employment practice for an employer (1) . . . to discriminate against any individual with respect to [her] compensation . . . because of such individual's . . . sex . . . ." 42 U.S.C. ¶ 2000e–2a. As Plaintiff points out, discrimination claims arising under Title VII often proceed according to the "burden shifting" framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). However, the *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 997. As such, it does not bear on the Court's analysis at this stage.

The sex discrimination provisions of Title VII and the EPA are construed in harmony. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989). Under Title VII, a plaintiff may establish a wage discrimination claim sufficient for Rule 12(b)(6) purposes by providing direct evidence of intentional discrimination. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). In the alternative, a plaintiff may plead her case circumstantially "by demonstrating that she is female, i.e., a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by males." *Id.* (citing *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992)). The Fourth Circuit has suggested that under this

12

circumstantial framework "there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the [ultimate] burden of proving an intent to discriminate on the basis of sex." *Id.* Thus, while the EPA essentially creates "strict liability" for sex discrimination cases, Title VII requires a showing of some sort of "discriminatory intent." *Hassman,* 790 F.Supp. at 569. Plaintiff fails to make this showing.

Plaintiff relies on the circumstantial argument that she is compensated at a lower rate than her male peers. As a result, Plaintiff must plausibly allege that "the job she occupied was similar to higher paying jobs occupied by males." *Brinkley-Obu,* 36 F.3d 336. For the reasons stated previously, Plaintiff's S.A.C. lacks appropriate comparators by which the Court could deduce that Plaintiff received less compensation for substantially equal work.

Even assuming *arguendo* that the Fourth Circuit's "relaxed standard of similarity between male and female-occupied jobs" for Title VII cases is the appropriate standard, Plaintiff still fails to plead the requisite discriminatory intent. *Id.* The only allegation in the S.A.C. bearing on this issue is the allegation that "[d]espite being presented with the [Gender Equity] Task Force findings," Defendants continued to compensate several male faculty members at a higher rate than Plaintiff and denied Plaintiff's request for a salary increase. (S.A.C. ¶ 53, 61.) This does not amount to discriminatory intent. *Compare Brinkley-Obu,* 36 F.3d at 354 (finding indirect evidence of discriminatory intent where plaintiff's employer compensated a subordinate at a higher rate, reassigned some of plaintiff's job duties to the subordinate and suggested that plaintiff needed to choose

13

"between having a career and being a mama"); *with Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190–91 (4th Cir. 2010) (declining to find discriminatory intent in discriminatory discharge case where plaintiff's complaint merely alleged in conclusory fashion that white employee was not disciplined for the same improprieties as plaintiff). At most, Plaintiff alleges that Defendants failed to adopt her recommendations on gender equity and compensation.

Even when drawing all reasonable inferences in Plaintiff's favor, the Court cannot find from these facts that Plaintiff's Title VII claim is anything more than speculative. As a result, Plaintiff has failed to plead a viable claim of wage discrimination under Title VII and Count I will be dismissed without prejudice.

### iii. Retaliation under the EPA and Title VII

Title VII and the EPA both contain proscriptions against retaliation. To state a retaliation claim pursuant to either the EPA or Title VII, a plaintiff must show "(1) that she engaged in a protected activity; (2) that [the defendant] took adverse employment action against her; and (3) that a causal connection existed between the protected activity and the adverse action." *Cerberonics,* 871 F.2d at 457 (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985)). A materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). The plaintiff must plausibly allege that her employer took such an action "*because* the plaintiff engaged in a protected activity." *Dowe v. Total*

14

*Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original).

Temporal proximity between the protected activity and the adverse employment action can give rise to an inference of causation. *See Lettieri v. Equant Inc.,* 478 F.3d 640, 650 (4th Cir. 2007). The Fourth Circuit has suggested that a two-and-a-half month gap between the protected activity and the adverse employment action may be sufficient to establish causation based on temporal proximity alone. *King v. Rumsfeld,* 328 F.3d 145, 151 & n.5 (4th Cir. 2003). However, in the absence of close temporal proximity, other evidence of "retaliatory animus" from the intervening period may be used to prove causation. *Lettieri,* 478 F.3d at 650.

Plaintiff has failed to state a plausible claim of retaliation under either the EPA or Title VII. Plaintiff asserts that in 2012, she served as chair of a "Gender Equity Task Force," which highlighted VSU's potential liability under the EPA and Title VII wage discrimination proscriptions. (S.A.C. ¶ 51.) Then, in mid-2014, Plaintiff requested and was denied a salary increase to equalize her pay in accordance with the EPA and Title VII. (*Id.* ¶ 61.) The parties appear to agree that Plaintiff's participation in the Task Force constituted a protected activity and that the denial of a salary increase constituted an adverse employment action.[2] However, the temporal proximity between the two events is

---

[2] In their initial Memorandum, Defendants argued that Plaintiff had not suffered an "adverse employment action" under Title VII. (Mem. in Supp. of Defs.' Mot. to Dismiss, ECF No. 29.) However, in their Reply brief, Defendants state, "The VSU Defendants do not contend that denial of a pay increase would not constitute an adverse employment action." (Reply in Supp. of Defs.' Mot. to Dismiss, 8, ECF No. 36.) Therefore, the Court concludes that Plaintiff has pled both participation in a protected activity and a materially adverse employment action.

tenuous. Consequently Plaintiff must rely on allegations of "retaliatory animus" to prove a causal connection. *Lettieri*, 478 F.3d at 650.

Plaintiff alleges five separate instances of retaliatory conduct on the part of VSU occurring between the Task Force presentation and the denial of a salary increase[3]: (1) VSU Provost Hill referred to Plaintiff as a "trouble maker"; (2) in December 2012, Hill refused to sign Plaintiff's time sheet until another Board member intervened; (3) in June 2013, VSU Administration encouraged one of Plaintiff's students to file a complaint—which was ultimately resolved in Plaintiff's favor—against her with the Office of Civil Rights; (4) in July 2013, Hill chastised Plaintiff via e-mail for challenging the VSU Administration's handling of pay discrepancies; and (5) in January 2014, Hill initially denied Plaintiff the opportunity to teach a class outside the University, although he later reinstated the course.

None of these incidents, on their own, constitute a "materially adverse employment action" that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68. However, the Court may consider these incidents together in determining whether "retaliatory animus" exists.

---

[3] Plaintiff also relates three other allegedly retaliatory incidents: (1) after Plaintiff filed her initial Complaint, VSU's EEO/Compliance manager informed Plaintiff that future requests for information from the school would need to go through her attorney; (2) in August 2015, Plaintiff reported a student for stalking and when VSU took no action, Plaintiff's Department Chair taught one of Plaintiff's classes for safety reasons; and (3) in January 2016, Plaintiff was removed from her role as Freshman Orientation Speaker. (S.A.C. ¶ 64, 67, 68.) "[E]vidence of recurring retaliatory animus *during the intervening period* can be sufficient to satisfy the element of causation." *Lettieri*, 478 F.3d at 650 (emphasis added). However, these events occurred after the filing of Plaintiff's Complaint and, as a result, they do not bear on the court's analysis.

*Lettieri*, 478 F.3d at 650. Even in the aggregate, Plaintiff's allegations in this case do not rise to the level of "retaliatory animus" required to plead a plausible retaliation claim.

In *Lettieri*, a female employee complained to her human resources department about gender discrimination on the part of her superiors. 478 F.3d at 650–51. When her superiors found out about the plaintiff's reports, she was stripped of her job responsibilities, divested of control over the sales team, and prohibited from setting prices and meeting directly with important clients. *Id.* The Fourth Circuit concluded that "[t]hese intervening events—which occurred regularly after Lettieri's complaint and can reasonably be viewed as exhibiting retaliatory animus on the part of [defendants]—are sufficient to show a causal link between Lettieri's complaint and her termination." *Id.* at 651.

By contrast, in *Elder v. DRS Technologies, Inc.*, the district court denied an employer's motion to dismiss where an employee of a defense technology company raised concerns about his employer's fraudulent timekeeping policies and was ultimately terminated. No. 1:13cv799, 2013 WL 4538777 (E.D. Va. Aug. 27, 2013). In the intervening period, the plaintiff's employer deployed him to active combat zones in violation of its own policies and placed him in life-threatening situations. *Id.* at *7. This circumstantial evidence raised the inference of retaliatory animus on the part of the plaintiff's employer. *Id.*

Here, Plaintiff has not alleged any conduct that could be considered evidence of retaliatory animus in the instant case. Three of the five allegedly retaliatory incidents— the delay in payment of wages, the student complaint with the Office of Civil Rights, and

17

the removal of the course at Fort Lee—were resolved promptly and without any significant inconvenience to Plaintiff. The remaining two incidents—Provost Hill's reference to Plaintiff as a "trouble maker," and Hill's e-mail criticizing Plaintiff—represent at best a strained personal relationship between Plaintiff and one of her superiors. That alone does not give rise to an inference of retaliatory animus. *See Burlington Northern*, 548 U.S. at 68 ("[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience").

Therefore, Counts II and IV will be dismissed without prejudice.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (ECF No. 28) will be granted. Counts I, II, III, IV and V against Defendants will be DISMISSED WITHOUT PREJUDICE.

An appropriate Order will accompany this Memorandum Opinion.

The clerk is directed to send a copy of this Opinion and the accompanying Order to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 30, 2016
Richmond, Virginia